**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 11-cv-00960-AP

In Re:

EDWARD LEON GORDON and
DORIS JEAN GORDON,

    Debtors.

BANK OF AMERICA, N.A.

    Appellant,

v.

EDWARD LEON GORDON and
DORIS JEAN GORDON,

    Appellees.

---

Civil Action No. 11-cv-01340-AP

STEPHEN LINDSEY PAHS

    Debtor.

SALLY ZEMAN, Standing Chapter 13 Trustee,

    Appellant,

v.

STEPHEN LINDSEY PAHS,

    Appellee.

---

**ORDER REVERSING JUDGMENTS**

**Blackburn, J.**

These consolidated cases present a web of related issues.  The essential question presented is this: in a Chapter 13 bankruptcy, what procedures are proper to make a binding determination of the value and treatment of a secured creditor's claim?  The bankruptcy court held that the Chapter 13 plan confirmation process is a proper procedure to determine the value and treatment of a secured creditor's claim and to bind a secured creditor to that valuation and treatment.  In some cases, the court held, such a determination may preclude determination and valuation of a claim via the claim procedures provided in the United States Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.[1]  The appellants challenge that holding, arguing that the bankruptcy claims process established in the Code is the proper procedure to determine the value of a secured creditor's claim.  The claims procedure, the appellants contend, may not be trumped by the Chapter 13 plan confirmation procedure.

In these consolidated cases, the appellants, Bank of America, N.A. and Sally Zeman, the Standing Chapter 13 Trustee, timely appeal final judgments of the United States Bankruptcy Court for the District of Colorado.  These appeals concern orders of the bankruptcy court confirming the Chapter 13 plans of the debtors.  The appellants challenge identical language in the confirmed Chapter 13 plans in both cases, as well as the bankruptcy court's orders approving that language and confirming those plans.  For the reasons discussed in this order, I reverse the orders of the bankruptcy court.

The parties' arguments are presented in the **Opening Brief of Appellant Bank**

---

[1] Unless noted otherwise, references to "§" or "section" are to Title 11 of the United States Code, references to "Code" are to the United States Bankruptcy Code, and references to "Rules" are to the Federal Rules of Bankruptcy Procedure.

2

**of America, N.A.** [#14]² filed June 14, 2011, the **Appellees' Response Brief on Appeal** [#23] filed July 13, 2011, and the **Reply Brief of Appellant Bank of America, N.A. and the Standing Chapter 13 Trustee, Sally J. Zeman** [#30] filed August 10, 2011. In addition, on October 19, 2011, Bank of America and Ms. Zeman filed a notice of supplemental authority [#32].³

### I. JURISDICTION

Under 28 U.S.C. § 1334, United States District Courts have original jurisdiction in all civil proceedings arising in cases under Title 11, United states Code, the United States Bankruptcy Code. I have jurisdiction to adjudicate this bankruptcy appeal under 28 U.S.C. § 158(a) and (b)(1).

### II. STANDARD OF REVIEW

I am bound by the bankruptcy court's findings of fact, unless they are clearly erroneous. FED. R. BANKR.P. 8013; *In re Branding Iron Motel, Inc.,* 798 F.2d 396, 399 (10th Cir.1986). No findings of fact are at issue in this case. I review the bankruptcy court's conclusions of law *de novo. In re Mullet,* 817 F.2d 677, 678 (10th Cir.1987). This appeal concerns the bankruptcy court's conclusions of law.

### III. BACKGROUND

My introductory summary of the key questions presented by this case belies the complexity of the interwoven provisions of law at issue here. The key order in question is the **Order Approving Plan Language** (Order) entered by the United States

---

² "[#14]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

³ The issues raised by or inherent to this appeal are fully briefed. Oral argument would not assist me materially in the resolution of those issues. Therefore, the appeal stands submitted on the briefs and the record.

Bankruptcy Court for the District of Colorado. In this case, that order can be found at [#14-1], pp. 15 - 29. In that order, the bankruptcy court describes clearly and thoroughly the issues, the differing positions of various courts on these issues, and the reasoning behind the ultimate holding of the bankruptcy court.[4]

On September 20, 2011, a different division of the bankruptcy court issued an order addressing the same issues. *In re: Butcher*, 459 B.R. 115 (Bankr. D. Colo. 2011). The **Butcher** court describes clearly and thoroughly the issues, the differing positions of various courts on these issues, and the reasoning behind its ultimate holding. Both of these orders provide a valuable foundation for an understanding and evaluation of the issues. Interestingly, the two courts reach different conclusions. Ultimately, I adopt the analysis reflected in the **Butcher** order.

The debtors in these consolidated cases proposed Chapter 13 plans which included non-standard language. The language in question is non-standard because it deviates from the language of the standard Chapter 13 plan form required in this district, Local Bankruptcy Form 3015-1.1. As summarized in the Order, the non-standard language essentially warns "secured creditors that, if they do not object to the plan's proposed treatment of their liens and/or the amount of arrearages stated, then the plan will have a *res judicata* effect as to both their lien and claim amount." The bankruptcy court held that this plan language is permissible under the Code. In addition, the court held that certain language in the standard Chapter 13 plan form conflicts with the Code and, therefore, is not properly part of a Chapter 13 plan.[5]

---

[4] I cite to the order of the bankruptcy court by the page number(s) used in the original order, e.g. *Order*, p. 1.

[5] After summarizing the legal context of this case, I will quote fully the standard and non-standard language at issue.

The briefing describes the facts and circumstances of the Gordon case, but provides no details about the Pahs case. Shortly after the Pahs case was filed in this court, it was consolidated with the Gordon case. In its **Order Approving Plan Language**, the bankruptcy court concluded that the same non-standard plan language was at issue in the Pahs case, and concluded that the facts in the Gordon case are best suited to highlight the legal issues presented in both the Gordon and Pahs cases. *Order*, p. 1 n. 1. The court indicated that a separate order in accordance with the **Order Approving Plan Language** would enter in the Pahs case. *Id.* Relying on the same reasoning stated in the Order in the Gordon case, the bankruptcy court approved the non-standard language in the Pahs case and confirmed the Chapter 13 plan in that case. *Opening brief* [#14], pp. 10 - 11.

The Gordons filed a petition for Chapter 13 bankruptcy relief on February 26, 2010. Objections to the Gordon's proposed Chapter 13 plan were due on April 10, 2010. The deadline for creditors to file a proof of claim was August 25, 2010. On March 25, 2011, the bankruptcy court entered its order confirming the Gordon's Chapter 13 plan, including the non-standard plan language. Bank of America filed this appeal in the Gordon Case. The Chapter 13 Trustee filed this appeal in the Pahs case. No creditor objected to the proposed Chapter 13 plans in either of these cases.

Bank of America is a secured creditor of the Gordons because payment of the Gordons' debt to Bank of America is secured by the lien of a deed of trust on the Gordons' principal residence. In their plan, the Gordons asserted that they did not owe any arrearages to Bank of America. Bank of America did not object to confirmation of the Chapter 13 plan and did not file a claim in the Gordon case.

Bank of America and the Chapter 13 Trustee filed these appeals to challenge the

5

non-standard plan language in the Gordon and Pahs Chapter 13 plans. The Chapter 13 Trustee has standing on all issues related to plan confirmation. 11 U.S.C. §§ 323, 1302. As detailed below, the Code requires a Chapter 13 plan to provide for the cure of an arrearage on certain secured debts. § 1322(b)(5). In their plan, the Gordons claimed that no arrearage was due to Bank of America. On the current record, it is unclear whether or not Bank of America disputes this contention. However, Bank of America does dispute the holding of the bankruptcy court that confirmation of the Gordons' plan constitutes a binding and conclusive determination that there was no arrearage due to Bank of America.

### III.  LEGAL BACKGROUND

This case concerns three major concepts at work in a Chapter 13 case: (a) plan confirmation; (b) claims allowance; and (c) treatment of secured creditors. I summarize each of these concepts.

#### A.  Plan Confirmation

Under the Code and the Rules, plan confirmation is on a relatively fast track. A Chapter 13 debtor must file a plan with the petition, or within 14 days after the petition is filed. FED. R. BANKR. P. 3015(b). "The hearing on confirmation of the plan may be held not earlier than 20 days after and not later than 45 days after the date of the meeting of creditors." 11 U.S.C. § 1324(b). Under § 1327, a confirmed plan has a potent binding effect:

> (a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

"Upon becoming final, the order confirming a chapter 13 plan represents a binding

6

determination of the rights and liabilities of the parties as ordained by the plan. Absent timely appeal, the confirmed plan is *res judicata* and its terms are not subject to collateral attack." **In re Talbot**, 124 F.3d 1201, 1209 (10th Cir. 1997) (internal quotation and citation omitted).

### B.  Claims Process

The claims allowance process is used in all chapters of the Code.  This process gives creditors the right to file a claim against the debtor's estate.  § 501.  Once a claim is filed, the claim is deemed allowed unless a party in interest objects to the claim.  § 502(a).  If an objection is filed, the bankruptcy court resolves the objection.  § 502(b). Creditors who hold allowed claims are entitled to distributions under a confirmed Chapter 13 plan.

However, the claims process often moves a bit more slowly than the plan confirmation process.  For most creditors, the deadline for filing claims is 90 days after the first meeting of creditors.  FED. R. BANKR. P.  3002(a).  This is 45 days <u>after</u> the latest date on which a hearing on plan confirmation may be held.  "So, in the typical Chapter 13 case, a plan is proposed, any objections to it are resolved, and the plan is confirmed well *prior to* any deadline for filing proofs of claim."  *Order*, p. 4 (emphasis in original). The deadline for filing claims may not be contracted by the bankruptcy court. FED. R. BANKR. P.  9006(c)(2).

### C.  Treatment of Secured Creditors

Generally, a secured creditor is a creditor who holds a lien or other security interest in property of the debtor to secure payment of the debt.  Bank of America  is a secured creditor of the Gordons.  Secured creditors are not required to file a claim.  By negative inference, FED. R. BANKR. P.  3002(a) generally is read to exclude any

requirement that a secured creditor file a claim.

> Neither the Code nor the Rules mandate that a secured creditor file a proof of claim. Indeed, the Advisory Committee Note to Rule 3002(a) states that, "A secured claim need not be filed or allowed under § 502 or § 506(d) unless a party in interest has requested a determination and allowance or disallowance under § 502."

*In re Babbin*, 160 B.R. 848 (D. Colo. 1993).[6] However, secured creditors may file a claim and often do file a claim.

The Code has many provisions that address the treatment of secured creditors. One key provision is § 506(d)(2), which provides, in pertinent part:

> To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless - -
> \* \* \* \*
> (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

This provision and many cases support the proposition that liens pass through bankruptcy unaffected. In many circumstances, "a secured creditor may ignore the proof of claim process altogether and look solely to its lien for satisfaction of the debt." *Order*, p. 5.

However, liens or security interests are not totally bullet proof in bankruptcy. For example, under § 522(f), a debtor may avoid a lien on personal property to the extent the lien impairs an exemption. If a secured claim is disallowed by the court, the lien securing the claim is void. § 506(d). Certain types of secured claims can be "crammed down" to the value of the collateral under § 506(a).[7]

---

[6] There are some exceptions to the rule that a secured creditor need not file a claim. **See, e.g., Hoxworth v. Blinder,** 74 F.3d 205, 210 (10th Cir. 1996) (Unless the collateral is in the possession of the court or the trustee, a secured creditor has no obligation to file a proof of claim). These exceptions do not apply here.

[7] Generally, a lien or other security interest is only as valuable as the collateral. Assuming a fair valuation of the collateral, a cram down does not actually impair a lien or other security interest.

8

### D. Debtors' Approach To A Chapter 13 Plan

The debtors in these cases rely on specific provisions of Chapter 13 as the bases for their efforts to define the claims of their secured creditors in their plans and then to bind those creditors to the plan. The debtors seek to bind creditors to the terms of a confirmed plan before the deadline for filing claims has expired. Under the debtors' approach, a claim filed by a secured creditor after confirmation of a Chapter 13 plan cannot alter the plan, even if the claim demonstrates that the plan is not in compliance with the requirements of the Code and the Rules.

In the present cases, § 1322(b) and (c) are the key provisions that permit a Chapter 13 debtor to address secured claims in the plan. In pertinent part, § 1322(b)(2) and (5) provide:

> (b) Subject to subsections (a) and (c) of this section, the plan may - -
>
> (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence . . . .
>
> (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any . . . secured claim on which the last payment is due after the date on which the final payment under the plan is due.

Concerning plan provisions that propose to cure a default, § 1322(e) also must be noted.

> (e) Notwithstanding subsection (b)(2) of this section and sections 506(b) and 1325(a)(5) of this title, if it is proposed in a plan to cure a default, the amount necessary to cure the default, shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law.

Under § 1322(b)(2), the Gordon plan may not modify Bank of America's rights because the Gordons' debt to Bank of America is secured by a lien in the Gordons'

9

principal residence. Relying on § 1322(b)(5), however, the Gordons state in their plan that they are not in default on their debt to Bank of America. If true, the Gordons need not provide in their plan a provision for curing a default within a reasonable time. If the Gordons' confirmed plan is binding on Bank of America, then Bank of America cannot later file a claim asserting that there is a default that must be cured under the terms of the plan.

If a Chapter 13 plan modifies the rights of secured creditor, other than a creditor whose only security is a security interest in real property that is the debtor's principal residence, and the plan is confirmed, then § 1327(b) and (c) can be read to bind that secured creditor to the treatment accorded in the plan.

> (b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.
>
> (c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

In this case, the debtors rely on § 1327 to support their argument that a confirmed plan is binding and, therefore, their non-standard plan language is appropriate.

### E.  Standard Local Bankruptcy Forms & Debtors' Non-standard Language

Paragraph VIII of the standard Chapter 13 plan form adopted in this district includes the following language.

> POST-CONFIRMATION MODIFICATION - The <u>debtor shall file and serve upon all parties in interest a modified plan</u> which will provide for allowed priority and allowed secured claims which were not filed and/or liquidated at the time of the confirmation. The value of property to satisfy 11 U.S.C. section 1325(a)(4) may be increased or reduced with the modification, if appropriate. The modification will be filed no later than one year after the petition date. Failure of the debtor to file the modification may be grounds

for dismissal.

Local Bankruptcy Form 3015-1.1, ¶ VIII (emphasis added).[8]  Local Bankruptcy Rule 3015-1(1) requires that the "Chapter 13 Plan form must be used when filing the original plan, as well as with any amendment to the plan."

The requirements of this standard plan provision address the potential conflict that arises when a plan is confirmed before the deadline for filing claims has passed. Under this language, a debtor with a confirmed plan is required to file a modified plan to provide, for example, for allowed secured claims that were not filed at the time of confirmation.  Failure to do so "may be grounds for dismissal."  ¶ VIII.  According to the appellants, this language permits prompt confirmation of a plan with a continuing ability to ensure compliance with the Code after post-confirmation claims are filed.  Under § 1329(a), a plan may be modified at any time before payments under the plan are completed.  The effect of § 1329(a) is discussed further below.

In the Chapter 13 plans at issue in this case, the debtors marked the language of ¶ VIII, quoted above, as not applicable.  In place of that language, the debtors inserted the following non-standard language:

> 1. Fed. R. Bankr. P. 3002, 3004, and 3021 shall apply to distributions made by the trustee pursuant to this plan. A proof of claim for an unsecured or priority creditor must be filed within the time set forth by these rules in order to be allowed and for the creditor to receive the distribution set forth in the plan. Tardily filed unsecured or priority claimants will receive nothing, except by separate motion and order. This plan does not constitute an informal or informal proof of claim. Secured creditors set forth in the plan need not file a proof of claim in order to receive distribution; however, if a creditor files a proof of claim which does not assert a security interest, it will be deemed to be unsecured and will share, pro rata, as a Class four claim. <u>An objection [to] confirmation of this plan must be filed in order to dispute the status or claim amount of any</u>

---

[8] Hereafter, I will refer to this standard language as "¶ VIII."

11

>creditor as specifically set forth herein. Pursuant to 11 U.S.C. sections
>1326 and 1327, this plan shall bind the parties, and the trustee shall
>distribute in accordance with the plan.
>
>\* \* \* \*
>
>3. Note to any creditor holding a deed of trust secured by the Debtor(s)'s
>real property: the proposed plan provides for the Debtor(s)'s best estimate
>of the mortgage arrears owed to your company (if applicable), as set forth
>in Class II(a). If you disagree with the amount provided, it is your
>obligation to file an objection to the plan.  In the absence of an objection,
>the amount set forth in the plan is controlling, and will have a *res judicata*
>effect subsequent to the entry of the order of confirmation.

*Order*, pp. 1 - 2 (emphasis in original).  The Gordon and Pahs plans were confirmed with this non-standard language.

## IV.  ANALYSIS

In effect, the non-standard language quoted above permits the plan to define the claim amount and treatment of any secured creditor, including the amount of any arrearage due to a creditor whose claim is subject to the limitations imposed by § 1322(b)(5).  Under that subsection, a default on a secured claim must be cured under the plan within a reasonable time.  The bankruptcy court held that once such a plan is confirmed, the plan is binding on creditors whose claims have been defined by the plan.[9]   In the view of the bankruptcy court, the plan is binding even if the deadline for creditors to file claims has not expired when the plain is confirmed.

Under this view, if the debtor states in the confirmed plan that he or she is not in default on a debt subject to the restrictions of § 1322(b)(5), that assertion becomes binding on confirmation of the plan.  If, after confirmation, a secured creditor files a timely claim asserting that the debtor is in default on such a loan, the creditor cannot pursue the issue to require (1) a determination of whether there is a default or not; and

---

[9] Importantly, the bankruptcy court emphasized that a plan that impacts the security interest rights of a creditor must be served properly on that creditor.  Absent proper service and notice, the plan is not binding on a creditor.  *Order*, pp. 14 - 15.

12

(2) if there is a default, a determination of reasonable plan provisions to cure the default.

After detailed analysis of the effect of the non-standard language, the bankruptcy court reached three key conclusions:

> 1) The post-confirmation plan modification requirement stated in ¶ VIII of this district's standard chapter 13 plan form is invalid because that requirement conflicts with § 1329(a), which defines who may initiate a post-confirmation modification. *Order*, p. 7.
>
> 2) If procedural requirements are met, an order confirming a plan that specifically addresses a secured creditor's claim has a *res judicata* effect. As a result, "(i)f a proposed plan unambiguously informs a creditor that its claim will be affected, disallowed or valued in a certain way, the creditor may not ignore the confirmation process just because the claims bar date has not expired." *Order*, pp. 11, 15.
>
> 3) The chapter 13 plan confirmation process and the Code's claims process are two alternate processes which may be used to determine a secured claim. If procedural requirements are met, either plan confirmation or the claims process provide sufficient due process to creditors whose rights are affected by a proposed plan or a claim proceeding. *Order*, pp, 11, 13 - 15.

These three conclusions are the bases on which the bankruptcy court approved the debtors' proposed non-standard language. I respectfully disagree with each of these conclusions.

### A.  § 1329(a) & Post-Confirmation Plan Modification Requirement

Paragraph VIII of the standard Chapter 13 plan form adopted in this district includes a requirement that after confirmation of a plan, the debtor shall file a modified plan under certain circumstances.

> The debtor shall file and serve upon all parties in interest a modified plan which will provide for allowed priority and allowed secured claims which were not filed and/or liquidated at the time of the confirmation.

Local Bankruptcy Form 3015-1.1, ¶ VIII. The appellees argue that this requirement is inconsistent with § 1329(a), which provides in relevant part:

13

> At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim . . . .

Section 1329(a) then provides a wide variety of permitted modifications.

A local rule that is inconsistent with the Code or attempts to limit a practice allowed by the Federal Rules of Bankruptcy Procedure is invalid. *In re Wilkinson*, 923 F.2d 154, 155 (10th Cir. 1991). The appellees note that § 1329(a) limits the power to request modification of a plan to the debtor, the trustee, or the holder of an allowed unsecured claim. According to the appellees, ¶ VIII improperly adds the bankruptcy court to the group that is permitted to request a modification under § 1329(a). The bankruptcy court agreed. "To the extent the Modification Rule amounts to a bankruptcy court order to modify a confirmed Chapter 13 Plan, it is inconsistent with the Code and invalid." *Order*, p. 7.

I respectfully disagree with this conclusion. "[T]he Code makes plain that bankruptcy courts have the authority – indeed, the obligation – to direct a debtor to conform his plan to the requirements" of the Code. *United Student Aid Funds, Inc. v. Espinosa*, ___ U.S. ___, ___, 130 S.Ct. 1367, 1381 (U.S. 2010) (citing §§ 523(a),1325, 1328(a)(2)). Section 1324(a) "*requires* bankruptcy courts to address and correct a defect in a debtor's proposed plan even if no creditor raises the issue." *Id*. at 1381 n. 14.

Another division of the bankruptcy court addressed this issue in *In re: Butcher*, 459 B.R. 115 (Bankr. D. Colo. 2011). The *Butcher* court noted § 105(a) of the Code:

> (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or

implement court orders or rules, or to prevent an abuse of process.
***Butcher***, 459 B.R. at 122 - 123.  As the ***Butcher*** court observed, the powers granted by § 105(a) may be used only in a manner consistent with the Code.  ***Id***.  Addressing a court's duty to ensure compliance with the Code, the Supreme Court also cited § 105(a) in ***Espinosa***.  ___ U.S. at ___, 130 Ct. at 1381.

Given the overarching duty of the bankruptcy court to require compliance with the Code, I cannot conclude that § 1329(a) prevents the bankruptcy court from requiring a Chapter 13 plan to comply with the Code via a modification of the plan after a plan has been confirmed.  Considering all of the applicable law, section 1329(a) does not impose such a restriction on the court's authority.  Therefore, I conclude that the requirement that Chapter 13 debtors include in their plans ¶ VIII of Local Bankruptcy Form 3015-1.1 is not in conflict with the Code.  On this issue, I adopt the reasoning of the ***Butcher*** court as stated in Section II.D. of its opinion.  ***Butcher***, 459 B.R. at 121 - 126.

### B.  Res Judicata Effect of a Plan Confirmation Order

No doubt, there is plenty of authority for the proposition that an order confirming a Chapter 13 plan has a *res judicata* effect.  To review, under § 1327, a confirmed plan has a potent binding effect:

> (a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

"Upon becoming final, the order confirming a chapter 13 plan represents a binding determination of the rights and liabilities of the parties as ordained by the plan. Absent timely appeal, the confirmed plan is res judicata and its terms are not subject to collateral attack."  ***In re Talbot***, 124 F.3d 1201, 1209 (10th Cir. 1997) (internal quotation

and citation omitted).  To this point in the analysis, there is no real dispute.

The appellees argue, in effect, that a court imposed requirement that a confirmed plan be amended later is in conflict with the well established law that an order confirming a Chapter 13 plan has a *res judicata* effect.  On this basis, the appellees argue, it is improper for the bankruptcy court to require debtors to include in their plans ¶ VIII of the standard Chapter 13 plan form adopted in this district .  According to this argument, requiring modification of a plan after confirmation of the plan prevents *res judicata*.

What does a plan confirmation order with a binding effect mean when a plan's non-compliance with the Code is revealed only after the plan has been confirmed?  That question is answered by looking to the content of the plan and the order confirming the plan.

> (I)t is the *contents of a confirmed plan* that is binding on the Debtors and their creditors under § 1327.  Where the plan commits the Debtors to reconcile their plan with the actual allowed claims following the lapse of the claim filing deadlines, that obligation is made binding by the confirmation order.

*Butcher*, 459 B.R. at 126 (emphasis in original).  With ¶ VIII as part of a confirmed plan, the debtor's obligation to amend the plan to maintain compliance with the Code becomes a binding commitment because it is part of the confirmed plan.  In this circumstance, the requirement that a debtor maintain continuing compliance with the law is *res judicata*.  Requiring continued compliance with the Code in a plan and in the order of confirmation does not conflict with the *res judicata* effect of a confirmation order.

### C.  Plan Confirmation & Claims Processing Are Alternative Procedures

To summarize, I do not agree that the language of ¶ VIII, which requires a debtor

16

to amend a confirmed plan to maintain compliance with the Code, is in conflict with the Code. I do not agree that the *res judicata* effect of an order confirming a plan, which includes the required ¶ VIII, precludes a creditor's use of the claims process. Rather, if a creditor uses the claims process and a claim indicates that the confirmed plan does not comply with the Code, *res judicata* does not preclude a properly filed claim from triggering a required modification of a confirmed plan. With that foreshadowing, my conclusion on this final question likely is obvious. Still, I will explain briefly.

The relatively short time frame for holding a confirmation hearing in a Chapter 13 case was added to the Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. Essentially, the debtors contend that this time frame and the other provisions of Chapter 13 discussed in this order combine to permit a Chapter 13 debtor to use plan confirmation as an exclusive means to establish conclusively the value and treatment of secured claims, independent of and to the exclusion of the bankruptcy claims process. This reading of Chapter 13 is not proper.

To the extent reasonably possible, the court is obligated to interpret a statutory scheme to give effect to each individual provision and to permit the statutes to function as parts of an integrated whole. This is so even when part of the whole has been amended. "(T)he normal assumption is that where Congress amends only one section of a law, leaving another untouched, the two were designed to function as parts of an integrated whole. We should give each as full a play as possible." **Markham v. Cabell**, 326 U.S. 404, 411 (1945).

The provisions of the Code at issue here can be read to function as parts of an integrated whole. As detailed earlier, § 1324(b) provides a rather short time line within which a hearing on the confirmation of a chapter 13 plan must be held. Meanwhile, the

17

deadline for creditors to file claims proceeds at a somewhat slower pace. "So, in the typical Chapter 13 case, a plan is proposed, any objections to it are resolved, and the plan is confirmed well *prior to* any deadline for filing proofs of claim." *Order*, p. 4. Claims filed after confirmation may show that the confirmed plan is not in compliance with the Code. What to do? Require the debtor to invoke § 1329 and amend the plan to maintain compliance with the Code. With this approach all of the relevant provisions of the Code remain effective, and Chapter 13 is not permitted to abrogate the claims provisions of the Code and Rules. Like the **Butcher** court, I conclude that the approach proposed by the debtors here effectively abrogates the claims provisions of the Code and the Rules. Such an abrogation is not proper. **Butcher**, 459 B.R. at 130 - 132 (discussing improper abrogation of Rule 3002(c), which concerns time for filing claims, and related issues).

### D.  Conclusion

Ultimately, the non-standard plan language proposed by the debtors and approved by the bankruptcy court in these cases conflicts with the claims processing procedures and other requirements of the Code and the Rules. Most important, the non-standard language improperly eliminates the requirement that a Chapter 13 plan remain in compliance with the Code even after the plan has been confirmed. On the other hand, the standard language of ¶ VIII, as contained in the standard Chapter 13 plan form adopted in this district, permits the court, the debtor, and the creditors to maintain compliance with all of the requirements of the Code, both before and after confirmation of a Chapter 13 plan. Because the non-standard language approved by the bankruptcy court is not in compliance with the requirements of the Code, I must reverse the orders of the bankruptcy court approving the non-standard language and

confirming the plans of the debtors containing that non-standard language.

## V.  CONCLUSION AND ORDERS

**THEREFORE, IT SO ORDERED** as follows:

1.  That in Civil Action No. 11-cv-00960-AP, *In re: Gordon*, the ruling of the United States Bankruptcy Court for the District of Colorado in the **Order Approving Plan Language** [docket #33 in the bankruptcy court, filed March 25, 2011] and the ruling of the United States Bankruptcy Court for the District of Colorado in the **Order Confirming Chapter 13 Plan** [docket #38 in the bankruptcy court, filed March 25, 2011] and any concomitant judgment are **REVERSED**;

2.  That in Civil Action No. 11-cv-01340-AP, *In re: Pahs*, the ruling of the United States Bankruptcy Court for the District of Colorado in the **Order Confirming Chapter 13 Plan** [docket #39 in the bankruptcy court, filed May 5, 2011] and which is based on the **Order Approving Plan Language** cited in paragraph one (1), above, and any concomitant judgment, are **REVERSED**;

3.  That these cases are **REMANDED** to the United States Bankruptcy Court for the District of Colorado for the entry of plan confirmation orders and any related orders consistent with this opinion.

Dated March 27, 2012, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge